United States District Court
District of Massachusetts

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> SHAWN WINBUSH, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) Criminal Action No. <br> ) 04-10364-NMG <br> ) <br> ) <br> ) |

MEMORANDUM & ORDER

GORTON, J.

In the instant criminal action, Shawn Winbush ("Winbush") is charged with conspiracy to import cocaine, in violation of 21 U.S.C. § 963, and importation of cocaine, in violation of 21 U.S.C. §§ 952(a), 960(a). He now moves to suppress evidence that the government obtained through an x-ray of his body. He also moves for revocation of the detention order presently in place.

I. **Factual Background**

On October 6, 2004, Winbush and Courtney Mighty ("Mighty") were passengers on a flight to the United States from Jamaica. Upon their arrival at Logan Airport, Customs and Border Patrol ("CBP") agents found approximately 105 pellets of cocaine hidden in a false bottom of Mighty's luggage. They found an additional four pellets in a pants pocket within the luggage. The pellets were tightly wrapped in condoms, a preferred packaging method by

-1-

narcotics couriers who ingest narcotics ("internal couriers").

Upon questioning, Mighty admitted that the luggage was his and, furthermore, that he had ingested pellets of cocaine. Authorities determined, from flight records, that Winbush was his traveling companion, a fact that Mighty confirmed when asked. Mighty told authorities that Winbush had also swallowed cocaine pellets.

CPB agents located Winbush within the airport and he agreed to be interviewed. Immigration and Customs Enforcement ("ICE") agents joined the interview. They read Winbush his Miranda rights and he signed a waiver. When asked whether he was an internal courier of cocaine, Winbush said "no". He then signed a consent to be x-rayed.

During the interview, CBP agents observed that Winbush was using lip balm frequently, was drinking large quantities of water, had belched loudly, was sweating profusely and appeared agitated. CBP interpreted those symptoms as an indication of cocaine ingestion. Winbush does not dispute that he displayed that appearance but argues that it could be explained in ways other than cocaine ingestion (e.g. that drinking a lot of water facilitates weight loss and good health).

Authorities arranged for Winbush to be transported to a hospital to be x-rayed. En route, he asked authorities why he should cooperate if he was going to be arrested in any event.

CBP agents explained that if he agreed to an x-ray and the results were negative, he could return to the airport and would be transported home. He was also told that, if he did not agree, he would be detained for a monitored bowel movement. Winbush said "ok let's go". He was x-rayed and medical personnel indicated that the x-ray was positive for foreign bodies. Winbush stated "you got me".

A criminal complaint was filed against Winbush on October 7, 2004 and an indictment filed on December 9, 2004. On November 24, 2004, Magistrate Judge Collings ordered Winbush detained pending trial.

On March 10, 2005, Winbush filed a Motion to Suppress "all evidence discovered as a result of the non-consensual x-ray of his person" and all statements subsequently made. On April 6, 2005, Winbush filed a Motion for Revocation of the Detention Order, arguing that conditions could be imposed to ensure his presence at trial.

## II. Defendant's Motion to Suppress

Governmental authorities do not need probable cause to conduct routine border inspections or customs searches. United States v. Uricoechea-Casallas, 946 F.2d 162, 166 (1st Cir. 1991). Rather, the Court of Appeals for the First Circuit has adopted the "no suspicion" and "reasonable suspicion" standards for

reviewing such searches:

> [u]nder the "no suspicion" standard applicable to routine border searches, a customs officer may search an individual based on subjective suspicion alone, or even on random basis. Where a search is not routine (e.g. a strip search), we have applied the "reasonable suspicion" standard. Under this standard, a border search of an individual's person is lawful if the government can "demonstrate some objective, articulable facts that justify the intrusion as to the particular person and place searched."

Id. (quotations and citations omitted). To simplify the present analysis, the Court assumes, arguendo, that the search of the defendant was unconsented and was a non-routine search under the standard referred to above.

Apparently, Winbush fully agrees with the facts as stated by the government (and set forth above) but argues that those facts do not give rise to reasonable suspicion that he was an internal cocaine courier. For instance, he does not dispute the contention that he was sweating profusely, drinking large amounts of water and using prodigious amounts of lip balm. He merely contends that those symptoms do not support reasonable suspicion because they are related to his health and dieting.

While defendant's explanations for his bizarre behavior are implausible and unpersuasive, the Court need not address them because the evidence to which Winbush fails to respond, taken alone, provided the government with reasonable suspicion to conduct a non-consensual x-ray. Winbush ignores evidence arising from the interview of Mighty. Before Winbush was x-rayed, the

government had established, both through flight documentation and Mighty's admission, that 1) Mighty and Winbush were traveling companions and 2) Mighty, after being found in possession of cocaine pellets and admitting that he had ingested several more, stated that Winbush had ingested some as well.  That evidence alone, which Winbush apparently does not dispute, tends to establish reasonable suspicion to conduct a non-consensual x-ray. Accordingly, defendant's motion to suppress will be denied.[1]

III. **Defendant's Motion for Revocation of Detention Order**

Winbush also moves for revocation of the order of detention imposed by Magistrate Judge Collings.  That motion will be denied because the rebuttable presumption of flight, which is applicable to Winbush pursuant to 18 U.S.C. § 3142(e), has not been refuted. As the Magistrate Judge found, the defendant has failed to offer an acceptable third-party custodian to whom he could be released. That fact, coupled with the overwhelming evidence against the defendant, suggests a high probability of flight.  Accordingly, defendant's motion will be denied.

---

[1] An evidentiary hearing is unnecessary because there are few, if any, facts in dispute and the defendant has not made a sufficient showing that an unconstitutional search has occurred. See United States v. Lewis, 40 F.3d 1325, 1332 (1st Cir. 1994); United States v. Panitz, 907 F.2d 1267, 1273 (1st Cir. 1990); United States v. Migely, 596 F.2d 511, 513 (1st Cir. 1979).

**ORDER**

In accordance with the foregoing, defendant's Motion to Suppress (Docket No. 30) is **DENIED** and defendant's Motion for Revocation (Docket No. 32) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated June 13, 2005